# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Case No. CR407-380 |
| | ) | |
| MARK CHARLES LYNN, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Defendant, who is charged with conspiracy, possession with intent to distribute anabolic steroids, possession of firearms by a felon, and criminal forfeiture, has moved to suppress certain evidence seized during a warrant-based search of his home and business, as well as the statements he made to federal agents during and after the search. (Doc. 13.) The Court held a hearing on these matters, at which time the government offered testimony from DEA Special Agent Robert Livingston. Defendant did not testify. For the following reasons, defendant's motion to suppress should be **DENIED**.

# I. FACTUAL FINDINGS

At 6:02 a.m. on the morning of February 28, 2007, ten DEA agents executed a federal search warrant at Lynn's residence, located at 1838 Cokesbury Drive in Savannah. After knocking on the door and announcing their presence, agents noticed movement near the curtain in the bedroom, and shortly thereafter a light came on in what appeared to be the bathroom. Fearing that Lynn or someone in the residence might be destroying evidence, Agent Sarhat gave the order to make a forced entry.

Agent Broom used a ram to force open the door, and the agents entered the residence with their weapons drawn. Agents Livingston and Sarhat found Lynn lying on the floor in the bathroom, although it was not clear whether he had fallen to the floor by accident or in compliance with the agents' command to "get on the ground." Lynn, who appeared to have just woken up, was obviously nervous and shaken. The agents handcuffed Lynn and escorted him to the living room. Lynn's wife was also in the residence. They kept her apart from defendant during the search and interview.

Agent Livingston stated that Lynn's heart was beating rapidly for at least thirty to forty minutes after the initial entry. Lynn is an extremely muscled body builder, and the agents believed that he was using anabolic steroids. Because of his size[1] and concerns that he may exhibit "steroid rage," the agents kept him handcuffed until they were certain that he did not pose a threat.

After Lynn was seated in his livingroom, Agent Livingston informed him that he was not under arrest so long as he was cooperative, although he indicated that Lynn might be arrested at a later date. Livingston then read Lynn his <u>Miranda</u> rights. Lynn was alert and did not appear to be under the influence of alcohol or any narcotic. He stated that he understood his rights and that he was willing to answer Livingston's questions. Livingston then proceeded with an interview, which lasted approximately an hour and a half. Once the handcuffs were removed, Agent Livingston advised Lynn that he was free to leave. The agents departed the residence some two to three hours after their initial entry.

---

[1] The agents had to use two sets of handcuffs to secure Lynn comfortably, for his muscled build made it difficult for him to keep his wrists in front of his body when only one pair of cuffs was employed. The handcuffs were removed after about an hour, once the agents were confident that he did not pose a threat.

They then executed a second warrant for Lynn's place of business, a "Nature's Pantry" health food store.

Following the initial search of his home and business, Lynn continued to cooperate with the DEA. He forwarded emails between him and his steroid supplier to Task Force Leader Broom. He also provided information about Keith Dalby and other alleged steroid dealers in Savannah. On March 1 and March 8, 2007, Lynn voluntarily came to the DEA office for additional interviews. Lynn was not re-advised of his rights at these meetings. Livingston testified that Lynn met with them on several other occasions, and he also stayed in regular telephone contact with the agent.

## II. ANALYSIS

### A. Incriminating Statements

Lynn seeks to suppress "all statements" which he made to law enforcement officers, apparently contesting their voluntariness. While defendant's brief does not elaborate upon his reasons for challenging the admissibility of his statements, he is nevertheless entitled to a pretrial

determination of whether his statements were voluntarily made. 18 U.S.C. § 3501; Jackson v. Denno, 378 U.S. 368 (1984).[2]

A statement is considered to be voluntarily made only if it is "the product of an essentially free and unconstrained choice by its maker." Culombe v. Connecticut, 367 U.S. 568, 602 (1961). Statements that result from "intimidation, coercion, or deception" by law enforcement officers are not voluntary and must be suppressed. Colorado v. Connelly, 479 U.S. 157, 163 (1986). Some form of government coercion is essential to a finding of involuntariness. Id. at 167. In determining voluntariness, the Court must assess "the totality of the circumstances—both the characteristics of the accused and the details of the interrogation." Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973). Coercive conduct normally involves an exhaustively long interrogation, the use of physical force, or the making of a promise to induce a confession. Connelly, 479

---

[2]Although defendant also cites Miranda v. Arizona, 384 U.S. 436 (1966), at no point does he specifically allege that his statements were secured in violation of his Miranda rights. Nor does the record even remotely support such a contention. On the day the agents searched defendant's residence, they administered Miranda warnings prior to questioning him (even though they assured him that he was not under arrest). On later occasions, defendant either voluntarily came to the DEA offices for a further interview or spoke to an agent by telephone. Thus, during the only situation in which defendant was even conceivably "in custody," he was given Miranda warnings before he agreed to speak with the agents. There was clearly no violation of Miranda in this case.

5

U.S. at 163 n.1; United States v. Mendoza-Cecelia, 963 F.2d 1467, 1475 (11th Cir. 1992). Ultimately, the Court must determine whether a statement was made freely or whether the defendant's 'will has been overborne and his capacity for self- determination has been critically impaired.'" Devier v. Zant, 3 F.3d 1445, 1455-56 (11th Cir. 1993) (quoting Culombe, 367 U.S. at 602)).

At the time of Lynn's initial interview at his residence, he was not overtly or implicitly threatened by the agents. Nor was he subjected to any abusive language or other form of coercion. Though defendant was clearly shaken by the intrusion into his home, there is no evidence of record that he believed that he was in physical danger or that he had no choice but to cooperate with the agents. But even if Lynn had harbored such a subjective belief, his state of mind is immaterial without some indication of police misconduct. Connelly, 479 U.S. at 167 ("coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary'").

At no time did the agents threaten Lynn or promise him any benefit in exchange for his cooperation. The agents did tell him that he would

"probably" not be arrested on the day of the search, a statement that arguably implied that if he was not arrested, it would be due to his cooperation. Such an equivocal statement, however, could not be construed as a promise of favorable treatment in exchange for a confession. Even if it were a promise, a minor inducement of that sort is not likely to overpower a defendant's free will. See United States v. Bailey, 468 F.2d 652, 673 (5th Cir. 1972).

"Expanded concepts of fairness in obtaining confessions have been accompanied by a correspondingly greater complexity in determining whether an accused's will has been overborne—facts are frequently disputed, questions of credibility are often crucial, and inferences to be drawn from established facts are often determinative." Jackson, 378 U.S. at 390. Agent Livingston's credibility was never challenged. Furthermore, no facts are in dispute. Though Lynn was handcuffed during most of the interview, and though he was visibly nervous and agitated, there is simply no evidence demonstrating that his will was overborne by the questioning agents.

Lynn's later statements to the DEA investigators were also entirely

voluntary. On those occasions, he either drove himself to the DEA office for an additional interview or telephoned an agent to provide information. It is undisputed that defendant was free to leave during his subsequent interview at the DEA office. There is no evidence of any improper police coercion during any of these subsequent interviews. Though he was not read his <u>Miranda</u> rights during those encounters, he was not in custody, so the warnings were not required. <u>United States v. Phillips</u>, 812 F.2d 135, 1360 (11th Cir. 1987) (in order to be in "custody" for purposes of <u>Miranda</u>, a reasonable person in the suspect's position must feel a restraint upon his freedom of movement to such an extent he would not feel free to leave).

Considering the totality of the circumstances as established by the evidence adduced at the evidentiary hearing, the Court finds that the government has demonstrated by a preponderance of the evidence that Lynn's statements were entirely voluntary. <u>Lego v. Twomey</u>, 404 U.S. 477, 489 (1972) (applying preponderance of the evidence test in voluntariness inquiries); <u>Jackson</u>, 378 U.S. at 391. There is no evidence in this record of any threats, use of force, improper inducements or

deception, or any other conduct by law enforcement agents designed to coerce defendant into making a statement. Accordingly, Lynn's motion to exclude his statements as involuntary should be **DENIED**.

**B.     Warrant for Search of Defendant's Business**

Lynn contends that the there was no probable cause to justify the issuance of the search warrant for his business because the information supporting the affidavit was impermissibly stale and there was no nexus between the alleged illegal activities and the location searched. (Doc. 13 at 6-8.)

Lynn argues that the warrant affidavit was based primarily upon information obtained from interviews conducted several years earlier regarding his purchase and sale of gamma butyrolactone ("GBL"), a precursor to gamma hydroxybutyrate ("GHB"). (Doc. 13 at 7.) GBL is a List I chemical, and GHB is a Schedule I controlled substance. The transactions occurred in 2000 and 2001, and the most recent interview implicating defendant in illegal activity occurred in 2004. Lynn's argument, however, mischaracterizes the warrant affidavit. The affiant's mention of the GBL was merely to establish an ongoing practice of

controlled substance violations.[3] The warrant was further supported by an advertisement printed *two days* before the warrant was issued stating that Lynn's business offered "10% OFF 'STIMEREX-ES' WITH EPHEDRA!" Lynn does not deny that, at that time, Ephedra was a Schedule 5 controlled substance. Accordingly, the warrant was not based upon stale information.

Nor is there any merit to defendant's contention that there was an insufficient nexus between his alleged illegal activity and the place to be searched. The Supreme Court has recognized that a search warrant may issue where the affidavit supporting the warrant application establishes "a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983); see also United States v. Brundidge, 170 F.3d 1350, 1352 (11th Cir. 1999). A court must consider the totality of the evidence in determining whether probable cause exists to justify the issuance of a search warrant, and that

---

[3] "Protracted and continuous activity is inherent in large-scale drug trafficking operations. . . . In such cases, then, the staleness issue should be construed liberally." Bascaro, 742 F2d at 1346 (citation omitted); United States v. Hooshmand, 931 F.2d 725, 735 (11th Cir. 1991) ("when the alleged criminal activity is ongoing . . . it is unlikely that the passage of time will dissipate probable cause.").

determination turns on the "assessment of probabilities in particular factual contexts. . . ." Gates, 462 U.S. at 232. The evidence "must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement." Id. It is the task of a reviewing court to determine whether the issuing judge had a "substantial basis" for finding probable cause. Id., at 238-39.

In the instant case, defendant advertised the fact that he was selling a controlled substance from his place of business. Such an advertisement is certainly a sufficient showing of probable cause to support the issuance of a warrant. As the Court noted during the hearing, an ad offering Ephedra for sale may be likened to a sign on the door of a residence offering cocaine for sale. Indeed, the showing here is stronger than in the hypothetical, as defendant's business trades in herbal supplements and he has a prior drug record, facts that lend greater credibility to the Ephedra advertisement than to a sign offering cocaine for sale (which may be considered a joke rather than an act of brazen lunacy). The Court is therefore persuaded that the reference to the ad in the warrant affidavit, together with the other information concerning defendant's

prior illegal activities, provided probable cause to search the store for those items advertised. Accordingly, Lynn's motion to suppress should be **DENIED**.

C. **Warrant for Search of Defendant's Home**

The warrant issued to search Lynn's home was similarly supported by a strong showing of probable cause. During a trash inspection of the residence conducted on the very day the warrant was applied for, DEA agents located a used syringe, several containers and envelopes mailed from the Phillipines containing white powder residue, and a container holding several small tablets with a label reading: "ANABOL 10, Each tablet contains: Methandieonone 10mg. Anabolic Hormone for the promotion of constructive anabolism of proteins. Manufactured by The British Dispensary." (Doc. 13 at 5.) As Lynn was suspected of being an unlawful user of anabolic steroids, the discovery of these items in his trash established "a fair probability that contraband or evidence of a crime" would be found in his home. Gates, 462 U.S. at 238. Accordingly, the warrant was supported by probable cause, and Lynn's motion to suppress evidence gathered at his home should be **DENIED**.

## III. CONCLUSION

For all of the above reasons, defendant's motion to suppress should be **DENIED** in its entirety.

**SO REPORTED AND RECOMMENDED** this 13TH day of February, 2008.

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA